UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X

ARNOLD EUGENE RODGERS,

                        Petitioner,

            -against-

UNITED STATES OF AMERICA,

                        Respondent.
-----------------------------------------------------X

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____           │
│ DATE FILED: June 11, 2020            │
└─────────────────────────────────────┘
```

18-CV-11244 (KMW)

11-CR-117 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

Arnold Eugene Rodgers ("Petitioner") petitions *pro se* for a writ of error *coram nobis* under the All Writs Act, 28 U.S.C. § 1651, based on his attorney's allegedly ineffective assistance.   For the reasons that follow, the Petition is DENIED.

## BACKGROUND

### A.  Charged Conduct

Before his arrest in this case, Petitioner was a supervising longshoreman at the Port of New York-New Jersey.   In May of 2010, a cooperating witness working with the Drug Enforcement Administration (DEA) identified Petitioner as a possible participant in the trafficking of heroin through the Port several years earlier.   The DEA then began investigating whether Petitioner may have retained a role in ongoing drug operations.   Using phone records, the DEA determined that Petitioner was in contact with individuals involved in heroin trafficking.

On July 31, 2010, Petitioner agreed to provide the cooperating witness with a firearm.

Petitioner drove himself and the cooperating witness to a house in New Jersey.    Petitioner went inside with the cooperating witness's money and returned with a Smith and Wesson 9 millimeter handgun and several bullets, which he gave to the cooperating witness.

On February 7, 2011, Petitioner was indicted on four counts for his role in a narcotics conspiracy.    (Indictment, ECF No. 11.)[1]    Counts One and Two of the Indictment charged Petitioner with conspiring with others to traffic heroin and cocaine in violation of 21 U.S.C. §§ 812, 841(a), 841(b)(1)(A), and 963.    (*Id.*)    Count Three charged Petitioner with the substantive offense of cocaine trafficking.    Count Four charged Petitioner with violating the Travel Act, 18 U.S.C. §§ 1952(a)(1) and (3), in connection with the narcotics trafficking.    (*Id.*)

### B.  Guilty Plea and Sentencing

On July 25, 2012, pursuant to a plea agreement, Petitioner pleaded guilty before Magistrate Judge Gabriel Gorenstein to a Superseding Information charging him with one count of violating 18 U.S.C. § 924(b) ("Section 924(b)").    (Petition ("Pet.")," Ex. 2, Civil ECF No. 2.) Specifically, the Superseding Information charged that Petitioner, "with knowledge and reasonable cause to believe that an offense punishable by imprisonment for a term exceeding one year was to be committed therewith, did transport and receive a firearm in interstate commerce, to wit, a Smith and Wesson 9 mm handgun and 54 rounds of 9 mm ammunition."    (*Id.*) Through the Plea Agreement, Petitioner waived his right to "file a direct appeal" or "bring a collateral challenge" to his sentence or conviction so long as the imposed sentence was within or below a stipulated Guidelines range of 18 to 24 months' imprisonment.    (Plea Agreement, ECF

---

[1]  Citations in the form of "ECF No." refer to the electronic docket associated with Petitioner's criminal case, 11-CR-117.    Citations in the form of "Civil ECF No." refer to the electronic docket associated with the present petition, 18-CV-11244.

No. 53-1 at 4.)

At the plea hearing, the Government represented that, "[i]f the case were to proceed to trial, the government would establish the defendant's guilt through records showing the origin of the firearm he did possess, [and] testimony from a cooperating witness about the purpose for which the defendant sold the firearm to the cooperating witness, which would be corroborated by evidence obtained from, among other things, a body wire at the time."   (Plea Trans. at 11–12, Pet. Ex. 1.)

Petitioner then set forth the factual basis for his guilty plea.   (*Id* at 12.)   Petitioner stated that he "gave a guy, James Sutton [the cooperating witness], a gun with some bullets, and he was using it to take it to New York to trade for cocaine."   (*Id.*)   He further explained, "when I gave the gun to James Sutton, I was under the assumption that he was going to use it for cocaine.   Yeah, it was given to a third party that went back and gave it to him."   (*Id.*) Clarifying the role of the third party, Petitioner stated, "I gave it to one person. He gave it to another person, but he told me that it was going – that he was doing some kind of drug business." (*Id.* at 13.)   Judge Gorenstein asked, "The third person was going to use it to help himself sell cocaine?" to which Petitioner answered, "I believe so." (*Id.*)   Judge Gorenstein concluded that Petitioner understood the nature of the charges, that the plea was voluntary, and that there existed a factual basis for the plea.   (*Id.* at 14–15.)

On April 3, 2013, the Court sentenced petitioner to 18 months' imprisonment, to be followed by two years of supervised release.   (Judgment, ECF No. 51.)   On April 19, 2013, Petitioner sought resentencing, arguing that the Court erred in denying Petitioner's request for a "variance" from the Sentencing Guidelines based on his minor role in the offense. (Resentencing Motion, ECF No. 52.)   The Court rejected his request for re-sentencing, stating that "[a]ny need for a variance from the Sentencing Guidelines was mooted by the Court having"

already granted at sentencing a "four-level downward adjustment" to the offense level.   (Order

Denying Resentencing, ECF No. 54.)

Petitioner completed his sentence of incarceration on July 11, 2014 and his term of

supervised release on July 10, 2016.

### C.  The Petition

Roughly two years and four months after Petitioner completed his term of supervised

release, on November 30, 2018, he filed the present *pro se* petition, through which he seeks to

vacate his conviction on the ground of ineffective assistance of counsel.   The Government

submitted its opposition to the petition on February 15, 2019.   (Gov. Opp'n., Civil ECF No. 8.)

Petitioner submitted a reply on April 3, 2019; the Court received a second copy of the reply on

May 17, 2019.   (Reply, Civil ECF Nos. 10, 13.)

## LEGAL STANDARD

A petition for a writ of error *coram nobis* provides a person who is not in custody a

mechanism for collaterally attacking a criminal conviction.   *Chaidez v. United States*, 568 U.S.

342, 345 n.1 (2013).   It is known as a "remedy of last resort" for individuals who cannot pursue

direct review or collateral relief by means of a writ of *habeas corpus*.   *Fleming v. United States*,

146 F.3d 88, 88–90 (2d Cir. 1998).

A district court may issue a writ of error *coram nobis* where "extraordinary circumstances

are present."   *Nicks v. United States*, 955 F.2d 161, 167 (2d Cir. 1992).   *Coram nobis* is not a

substitute for appeal, and relief under the writ is limited to those cases in which "errors . . . of the

most fundamental character" have rendered "the proceeding itself irregular and invalid."   *Foont

v. United States*, 93 F.3d 76, 78 (2d Cir. 1996) (quoting *United States v. Carter*, 437 F.2d 444,

445 (5th Cir.)).   The proceedings leading to the petitioner's conviction are presumed to be

correct, and "the burden rests on the accused to show otherwise."   *United States v. Morgan*, 346 U.S. 502, 512 (1954).

To carry this burden, a petitioner seeking *coram nobis* relief must establish three conditions.   The petitioner must demonstrate (1) that there are "circumstances compelling such action to achieve justice," *Morgan,* 346 U.S. at 511; (2) that "sound reasons exist [] for failure to seek appropriate earlier relief," *id.* at 512; and (3) that the petitioner "continues to suffer legal consequences from his conviction that may be remedied by granting of the writ," *Nicks*, 955 F.2d at 167.

Because criminal defendants enjoy a Sixth Amendment right to counsel, a defense attorney's ineffective assistance can constitute compelling circumstances to warrant *coram nobis* relief.   *Kovacs v. United States*, 744 F.3d 44, 49 (2d Cir. 2014).   A petitioner seeking *coram nobis* relief based on ineffective assistance of counsel must satisfy the *Strickland* test.   *Id.* Under *Strickland v. Washington*, a petitioner demonstrates ineffective assistance by proving (1) that defense counsel's performance was objectively unreasonable, based on prevailing professional norms; and (2) that the deficient performance prejudiced the defense.   466 U.S. 668, 687–88 (1984).

With regard to the first prong, "a reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."   *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004) (quoting *Strickland*, 466 U.S. at 689).   In this way, "[j]udicial scrutiny of counsel's performance must be highly deferential."   *Strickland*, 466 U.S. at 689.   The Court's review "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."   *Id*.

To establish the second prong of the *Strickland* test, a petitioner must show a "reasonable

probability" that, but for counsel's errors, the result of the proceedings would have been different.   *Id.* at 694.   "A reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Id.*

If a petitioner is unable to demonstrate that his attorney's performance was inadequate, the Court need not address the issue of prejudice, and vice versa.   "[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one."   *Id.* at 697.

## DISCUSSION

Petitioner seeks *coram nobis* relief on the ground that his attorney was constitutionally deficient.   Petitioner contends that his attorney failed to investigate the "essential elements of the offense of 18 U.S.C. § 924(b)," to which Petitioner pleaded guilty, "as it pertained to interstate commerce."   (Pet. at 16.)   Specifically, his attorney should have advised him—and argued—that he could not have been found guilty of that offense in light of *United States v. Havelock*, a 2008 decision issued by a district court in the District of Arizona interpreting Section 924(b)'s interstate commerce requirement.   (*Id.*); *see United States v. Havelock*, 560 F. Supp. 2d 828 (D. Ariz. 2008) (Silver, C.J.).   Petitioner also asserts that his attorney should have objected to the Government's "erroneous description" of Section 924(b)'s interstate commerce requirement.   (*Id.*)   The Government disputes these substantive allegations and also argues that Petitioner's claims are barred on timeliness grounds.

In *Havelock*, the district court held that Section 924(b) does not apply to the receipt of a firearm that is "entirely intrastate in nature."   *Havelock*, 560 F. Supp. 2d at 831, 834.   There, the defendant was charged with violating Section 924(b) for purchasing a rifle in Arizona with the intent to use it in Arizona.   *Id*. at 829.   The Government argued that the defendant's conduct

6

satisfied the interstate commerce requirement because the gun had traveled in interstate commerce at some point prior to defendant's purchase.

In rejecting the Government's position, the *Havelock* court recognized that Section 924(b) differs in a grammatically significant way from 18 U.S.C. § 922(f), a provision enacted alongside Section 924(b) as part of Title IV of the Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351 (1968).   Section 922(f) makes it unlawful for anyone under indictment or convicted of a felony "to receive any firearm or ammunition *which has been* shipped or transported in interstate or foreign commerce." (emphasis added).   By contrast, in Section 924(b), Congress criminalized, in relevant part, receiving "a firearm or any ammunition *in* interstate or foreign commerce." (emphasis added).   Thus, unlike in Section 992(f), in Section 924(b) "the proscribed act and the interstate-commerce reference are in the present tense, denoting that the acts are contemporaneous"—that is, the "receipt is part of the interstate movement."   *Havelock*, 560 F. Supp. 2d at 832.

Compelling as this analysis may be, it is not binding in the Second Circuit.   This Circuit has not defined the precise contours of the conduct that suffices to satisfy Section 924(b)'s interstate commerce requirement.[2]   *Havelock* had been cited by no other court at the time of Petitioner's guilty plea, and has been cited only once since.   *See United States v. Gassew*, 519 F. App'x 764, 766-67 (3d Cir. 2013) (rejecting Defendant-Appellant's reliance on *Havelock* in evaluating the Hobbs Act's interstate commerce requirement).   Petitioner's counsel did not render ineffective assistance "by failing to raise an argument that would have been—and still is,

---

[2] One court in this Circuit has determined that Section 924(b) "includes the requirement of a case-by-case showing of a nexus between the intrastate activity and interstate commerce." *United States v. Taylor*, 897 F. Supp. 1500, 1505 (D. Conn. 1995).

in this Circuit—a novel argument." *Trudeau v. United States*, 16-CV-273, 2013 U.S. Dist. LEXIS 206228, at *15 (D. Conn. Apr. 13, 2017).

Moreover, even if *Havelock* had any precedential value, its facts are distinguishable and the rule Petitioner derives from it would not necessarily exclude his conduct from the scope of Section 924(b).   Because *Havelock* involved a defendant's receipt and use of a gun within Arizona, the Government in that case could establish a 924(b) violation only if the gun's previous movement—such as from the place of manufacture to the place of sale—served to establish an interstate commerce nexus.   Here, by contrast, Petitioner received a gun in New Jersey for use in New York.   Unlike in *Havelock*, this set of facts bears "some contemporaneous link to interstate commerce" and is not "entirely intrastate in nature."   *Havelock*, 560 F. Supp. at 833.   In addition, whereas *Havelock* involved only the receipt of a firearm, this case involved both receipt and *transport*—an additional and alternative element of Section 924(b) not addressed in *Havelock*.

Defense counsel's performance was objectively reasonable.   Defense counsel was not ineffective for failing to inform his client or to argue that a single out-of-district trial court, in a non-binding opinion based on distinguishable facts, took a view of a statutory requirement that, if applied in Petitioner's case, may or may not have undercut the factual predicate of the offense to which Petitioner pleaded guilty.   Because the Court finds that Petitioner's attorney acted within the wide range of professionally competent assistance, it does not separately address the issue of prejudice.

Petitioner has not established a colorable claim of ineffective assistance of counsel and, therefore, the Court lacks a basis to grant *coram nobis* relief.   *See Foont*, 93 F.3d at 79.   The Court need not consider whether sound reasons exist for Petitioner's failure to seek appropriate earlier relief.   *Kyem v. United States*, No. 00-CV-1643, 2000 U.S. Dist. LEXIS 4607, at *9

(S.D.N.Y. Apr. 11, 2000) (Baer, J.).

**CONCLUSION**

For the foregoing reasons, the petition for a writ of error *coram nobis* is DENIED.


SO ORDERED.

Dated: New York, New York
       June 11, 2020                              _____/s/ Kimba M. Wood_____
                                                  KIMBA M. WOOD
                                                  United States District Judge